UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROMAR SALES CORP., and | ) | |
| DIANE G. KRANZ, executor of the estate of | ) | |
| David Geller, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -v- | ) | |
| | ) | No. 1:12-cv-838 |
| STEPHEN S. SEDDON, SHELLY PAXSON, and | ) | |
| DORIS J. KUNKLE, co-trustees of the Ellis | ) | HONORABLE PAUL L. MALONEY |
| Seddon Trust dated December 17, 1993, | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ELLIS SEDDON ENTERPRISES, INC., | ) | |
| Nominal Defendant. | ) | |
| _____ | ) | |

## OPINION AND ORDER GRANTING MOTION TO DISMISS

This case is part of a battle for control of Ellis Seddon Enterprises, Inc. ("ESE"). The two

Plaintiffs, Romar Sales Corp. and the Estate of David Geller, each claim ownership of 50% of ESE's

shares. They ask this court to dissolve ESE under Michigan law because they have deadlocked with

the company's other 50% owner, the Seddon Trust (here represented by its Trustees, each named

as Defendants). This matter is complicated, however, by the fact that the Estate previously sued on

the same ground in the Michigan courts. That court dismissed the Estate for lack of standing and

refused to allow an amended complaint naming Romar as Plaintiff. The Estate's appeal of that ruling

is still pending.

At issue today are two, largely procedural, motions.  In the first, Defendants ask this court

to either (1) dismiss Romar's complaint under the *Burford* abstention doctrine; or (2) stay the case

under the *Colorado River* abstention doctrine while the state-court appeal is pending. (ECF No. 19.)

In the second motion, Plaintiffs ask for summary judgment determining that Romar does in fact have capacity to file this suit. (ECF No. 43.)

For the reasons discussed below, this court finds that *Burford* abstention requires dismissal of this case.  The court therefore declines to opine on the other issues raised in the parties' filings.

## I.  BACKGROUND

### A.    General Background

In 1978, Ellis Seddon Enterprises, Inc. ("ESE") was incorporated in Michigan. ESE was organized as a closely held corporation with two 50% shareholders: Romar Sales Corp. and the Ellis Seddon Trust ("the Trust"). Romar, in turn, was a New York corporation owned either primarily or entirely by David Geller,[1] and the Trust is managed by its Trustees—Defendants Stephen S. Seddon, Shelly Paxson, and Doris J. Kunkle. This co-ownership arrangement proved satisfactory for over 30 years.

The problems underlying this lawsuit began in April 2009, when Mr. Geller died. Diane G. Kranz, Romar's sole director, was named executor of Mr. Geller's estate. Ms. Kranz and the Trustees appear to have a difference of opinion on how ESE should be run. According to the complaint in this case, the Trustees have "held complete control of all corporate offices since at least April 6, 2009, and ha[ve] operated and managed ESE since then for their own financial benefit." (Am. Compl., ECF No. 29, ¶ 21.) Despite repeated requests, they have refused to give Romar a voice in management, to declare dividends or distribute any profits to Romar, and even to allow Romar

---

[1] Defendants argue that Rosemarie Senatore also holds some unidentified portion of Romar's stock, but the evidence they present shows only that she signed documents on the company's behalf, not that she was a shareholder. At the same time, it appears that Romar has not produced stock certificates confirming its ownership. In any case, this dispute is not relevant to the matters at issue today.

access to ESE's financial records. (*Id.* ¶¶ 22–24.) Because neither co-owner can claim a majority vote, the two shareholders have deadlocked on numerous issues, and ESE allegedly has not had a properly elected board of directors since 2009. (*Id.* ¶¶ 27–29.)

For their part, the Trustees argue that for years, Mr. Geller took annual distributions from ESE, while they were forced to invest their profits back into the company. They appear to cite these excessive distributions as justification for their actions since Mr. Geller's death.

In 2010, while these disputes were heating up, Romar began the process of dissolution. To date, it does not appear to have formally disposed of its ESE shares.

### B.     State-Court Suit

On November 4, 2011, Ms. Kranz, on behalf of the Geller Estate, filed suit against the Trustees in the Circuit Court of Van Buren County, Michigan. Kranz sought to dissolve ESE because of this alleged deadlock, and she sought an accounting of the company's finances. (*See* ECF No. 20-1.) Several months later, the Trustees moved to dismiss, claiming that because Romar and not Geller held the shares in ESE, Geller's estate lacked standing to sue for dissolution. In response, Kranz argued that though Romar had not formally disposed of its ESE stock, the Estate should be treated as the "equitable and beneficial owner" of the shares. At the same time, she moved to amend the complaint to add Romar as a plaintiff. (ECF No. 20-2.)

The court was unconvinced. It refused to amend the complaint and dismissed Kranz's suit on June 25, 2012. (ECF No. 20-3.) Keller's appeal of this decision is still pending at the Michigan Court of Appeals.

### C.     The Present Suit

On August 13, 2012, shortly after the state court dismissed Kranz's case, Romar filed suit

in this court against the Trustees, seeking dissolution and an accounting on much the same grounds as the state-court suit. (ECF No. 1.)

In their Answer, the Trustees alleged that Romar lacked the authority to file this action because it had been dissolved. In response, Romar moved to amend the complaint to add as a plaintiff the Geller Estate, through Ms. Kranz. The court granted the motion. (ECF No. 28.)

## II.  LEGAL FRAMEWORK

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).  Only enough facts are required "to state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).  The plausibility standard is not the same thing as "a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted).  When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions.  *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369.  Further, plausibility is determined in light of the context of the allegations. *Id.*

4

Though a court deciding a Rule 12(b)(6) motion is generally confined to the pleadings, Fed. R. Civ. P. 12(d), certain other matters may be properly considered without converting the motion into one for summary judgment.  Documents either attached to the pleadings or "referred to in the pleadings and . . . integral to the claims" may be considered in ruling on a 12(b)(6) motion. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).  Further, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment."  *Id.* at 336 (citing *Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004)).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

5

### III.   DISCUSSION

With this background in mind, we come to the present motions. In the first, Defendants ask this court to either: (1) dismiss Romar's complaint under the *Burford* abstention doctrine; or (2) stay the case under the *Colorado River* abstention doctrine. (ECF No. 19.) In the second, Plaintiffs move for summary judgment, asking the court to resolve the issue of whether Romar has capacity to file this suit. (ECF No. 43.)

### A.   *Burford* Abstention

The Supreme Court first enunciated the doctrine known as *Burford* abstention in holding that a federal district court should have declined to hear a suit seeking review of a Texas commission's oil-drilling permits. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 333–34 (1943). The doctrine has proved flexible, however, expanding to apply to a number of different situations. *See* Charles Alan Wright et al., 17A Federal Practice & Procedure § 4244. The Sixth Circuit summarizes the doctrine as follows: "*Burford* abstention is appropriate where timely and adequate state-court review is available and (1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660–61 (6th Cir. 2002) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989)).

A number of federal courts have applied *Burford* abstention to dismiss cases seeking to dissolve corporations under state law. *See, e.g.*, *In re English Seafood (USA) Inc.*, 743 F. Supp. 281, 289 (D. Del. 1990); *Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994)

6

(collecting cases). The most important for our purposes are two Sixth Circuit decisions: *Caudill v. Eubanks Farms, Inc.* and *Hunter v. SMS, Inc.*

In *Hunter*, the older of the two cases, the district court had applied *Burford* to dismiss a suit seeking to dissolve a Michigan corporation. The appellate panel affirmed this decision in an unpublished, *per curiam* opinion. 843 F.2d 1391, 1988 WL 30056, *15 (6th Cir. Apr. 6, 1988) (unpublished opinion). "We have little difficulty in finding that the State of Michigan has enacted a comprehensive legislative scheme governing businesses which elect to incorporate in that state," the court noted. *Id.* Michigan placed jurisdiction over dissolution suits exclusively with the circuit courts, "provid[ing] a forum with specialized competence in the areas of internal corporate matters." *Id.* "The state should be permitted to exercise control over the internal affairs of its domestic corporations free from interference by federal courts," opined the court, finding for that reason that the district court had properly abstained from deciding the claim. *Id.* at *15–16.

As an unpublished decision, *Hunter* is not directly binding on this court. The Sixth Circuit's later decision in *Caudill v. Eubanks Farms, Inc.*, however, is binding authority. The *Caudill* court faced much the same question as in *Hunter*, except under Kentucky law. As in the prior case, the court concluded that district courts should abstain from hearing suits to dissolve Kentucky corporations.  The panel compared such cases to divorce actions, which the federal courts traditionally declined to hear: "The dissolution of a corporation might in fact be thought of as a 'corporate divorce.' Taking this analogy one step further, a federal court's decision to abstain in equitable actions seeking such a 'corporate divorce' prevents it from terminating the life of a corporation, which depends upon state law for its existence, just as a federal court's lack of subject matter jurisdiction over divorce proceedings avoids interfering with state laws governing domestic

7

relations." *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 664 (6th Cir. 2002). More importantly, the *Caudill* court noted the earlier decision in *Hunter* and adopted it in full:

> Although we are not bound by an unpublished opinion, we agree with [*Hunter*'s] reasoning and adopt it here. Like Michigan, the Kentucky Legislature has enacted a comprehensive legislative scheme to govern businesses which elect to incorporate in the state. We see no reason to disturb important state interests in this case either.

*Id.* at 665.

The combination of *Hunter* and *Caudill* effectively constrains this court. A binding decision of the Sixth Circuit accepted the reasoning of a case deciding the precise issue presented today. Romar argues, however, that this case is distinguishable, as it presents issues of New York law in addition to the Michigan-specific issues. In particular, Romar's dissolution raises questions about who, if anyone, is entitled to act as ESE's 50% shareholder. When the Geller Estate sued in the state courts, the Trustees argued—successfully, pending appeal—that the Estate lacked standing to do so. In this case, the Trustees argue that Romar also lacks authority to file this action, because it has been dissolved. Thus, Romar argues, the federal courts have a strong interest in ensuring that the non-Michigan parties here are treated fairly.

It is certainly true that "[d]istrict courts must factor 'the strong federal interest in affording [out-of-state litigants] a neutral forum for . . . state law claims' into the *Burford* analysis." *Gray v. Bush*, 628 F.3d 779, 786 (6th Cir. 2010). But the mere existence of an out-of-state party does not make abstention improper. Indeed, both *Hunter* and *Caudill* were diversity actions. Further, though Plaintiffs attempt to distinguish *Caudill* and *Hunter* on the facts here—in particular Romar's dissolution and the Michigan court's dismissal of Ms. Kranz's suit—the court finds these distinctions unconvincing. The fact that New York law will be relevant to whether Romar can bring suit here does not take away from the fact that Michigan's law and policy regarding in-state business

entities is even more central to this dispute.  And while Romar expresses concern that Michigan's courts will refuse to allow *any* party to act on behalf of Mr. Geller's 50% ownership interest, that result is far from likely. Someone has to own the ESE shares, and the fact that the state court found that the Geller Estate was not the shareholder does not mean that the court would also refuse Romar. Nor does the state court's refusal to allow an amended complaint adding Romar suggest anything untoward. The court refused on the ground that the Estate had not shown that it had authority to act on Romar's behalf—that is, that Plaintiff simply failed to pay proper attention to corporate formalities. Nothing here suggests that a state court properly presented with the entirety of this situation would find that no ESE shareholder could bring such a claim. Without stronger evidence, the mere possibility that the state court might err is not enough to distinguish *Hunter* and *Caudill*.

## IV.   CONCLUSION

For these reasons, the court finds that dismissal under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), is appropriate here.

## ORDER

For the reasons discussed above, the court hereby **GRANTS** Defendants' motion to dismiss (ECF No. 19).  Plaintiffs' complaint is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Date:   May 29, 2013                                       /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            Chief United States District Judge

9